NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0537n.06

Case No. 22-3271

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Dec 22, 2022

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DAPHNE L. COUNTS, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| v. | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant-Appellee. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: SILER, BUSH, and READLER, Circuit Judges.

SILER, Circuit Judge. Daphne L. Counts challenges the district court's review of the Commissioner of Social Security's final agency decision denying her disability benefits and supplemental-security income. According to Counts, the administrative law judge ("ALJ") violated the treating-source rule by failing to give "good reasons" for according three of her treating-psychiatrist's opinions little weight. Yet, Counts concedes that the ALJ's order discussed, point-by-point, the internal inconsistencies in the treating-psychiatrist's opinions and between the treating-psychiatrist's opinions and the rest of the record. We affirm.

I

Counts applied for disability benefits and supplemental-security income in 2016 based on allegations that she was disabled by mental impairments including anxiety, panic attacks, and depression. The Social Security Administration denied Counts's applications, and she sought review before an ALJ. The ALJ decided that Counts was not disabled under the Social Security

Act.  In reaching her decision, the ALJ considered opinions from multiple healthcare professionals including four from Counts's treating psychiatrist, Dr. Johnson.

Each of Dr. Johnson's opinions reflected functional impairment to varying degrees.  First, the ALJ considered Dr. Johnson's Global Assessment of Functioning ("GAF") score.  A GAF score measures "overall psychological, social and occupational functioning" on a scale of 0 to 100.  Dr. Johnson reported that Counts scored 60, which indicates "moderate difficulty" in "social, occupational, or school functioning."  Second, the ALJ considered a July 2017 Employability Form.  There, Dr. Johnson checked boxes indicating that Counts could not perform any of the six listed cognitive skills:  "remember work location and work procedures," "carry out instructions," "maintain attention and concentration," "perform activities within a schedule," "sustain an ordinary routine," and "interact with general public."

Next, the ALJ reviewed an August 2017 Mental Status Questionnaire.  On this form, Dr. Johnson noted that Counts had a "fair" ability to maintain attention but would have difficulty remembering how to complete tasks.  Dr. Johnson's fourth opinion reviewed by the ALJ was a March 2019 Employability Form.  There, Dr. Johnson checked boxes indicating that Counts was "markedly" limited in two of the same six cognitive skills from the July 2017 Employability Form (remembering work location and procedures; and interacting with the general public) and "extremely" limited in the remaining four cognitive skills.  In weighing Dr. Johnson's opinions, the ALJ gave "partial weight" to the GAF score opinion and "little weight" to her 2017 and 2019 opinions.

Counts sought review of the ALJ's decision before the Social Security Appeals Council, which denied her request and adopted the ALJ's decision as the Commissioner's final decision.  Counts then sought review from the district court.  She argued that the ALJ failed to provide "good

reasons" for according Dr. Johnson's 2017 and 2019 opinions little weight. The district court concluded that the Commissioner's decision was supported by substantial evidence based on the ALJ's detailed discussion of the internal inconsistencies in Dr. Johnson's four opinions and between her opinions and other parts of the record.

II

In social security cases, we review a district court's decision de novo. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009). Where the Commissioner's decision applied the proper legal standards and followed the relevant regulations, we, like the district court did here, will affirm the decision if it is supported by substantial evidence. *Id.* Counts does not argue that the ALJ (and thus the Commissioner) used the wrong law or ignored regulations; she argues that the ALJ's reasons for according Dr. Johnson's opinions little weight were not supported by substantial evidence. Because Counts's contention is belied by the record, we affirm the district court.

Social security decisions are made via a five-step process: "The Administration checks (1) if the person is not engaged in gainful activity, (2) if she has a severe, medically verifiable physical or mental impairment, and (3) if she has a qualifying impairment that leads to a disability finding by default." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)). At the fourth step, "the Administration calculates her residual functional capacity" to see if she has held a job "she can do despite her impairment." *Id.* At the last step, the Administration decides whether other work is available for someone of her age, education, work experience, and residual functional capacity. *Id.* at 931–32. Here, Counts's challenge goes to the medical evidence, i.e., the weight assigned to Dr. Johnson's opinions, that the ALJ relied on while determining Counts's residual functional capacity at steps four and five.

At the core of her challenge is the treating-source rule. Under this rule, an ALJ should generally give controlling weight to a treating-physician's opinions because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective . . . that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c)(2) (governing opinion evidence for claims filed before March 27, 2017); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). However, an ALJ need not give controlling weight if, for instance, the treating-physician's opinion is inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *see also Gayheart*, 710 F.3d at 376. In either case, an ALJ must "always give good reasons . . . for the weight" assigned to the "treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Gayheart*, 710 F.3d at 376. An ALJ meets this standard when her factfinding and analysis are "sufficiently specific to make clear" the weight assigned to the treating-physician's opinions and reasons why. *Gayheart*, 710 F.3d at 376.

Here, the ALJ gave good reasons that were sufficiently specific for assigning Dr. Johnson's opinions little weight. The ALJ explained, in detail, how Dr. Johnson's opinions were inconsistent with substantial evidence in the record—namely, her own opinions and treatment notes, and Counts's daily living activities. Counts concedes that the ALJ gave these reasons. But she nonetheless argues they cannot be "good reasons" because they are unsupported by the record. We disagree.

First, the record shows internal inconsistencies in Dr. Johnson's opinions and treatment notes. Her July 2017 opinion said Counts had no ability to maintain attention, but the next month's opinion said Counts's ability to maintain attention was "fair." Moreover, Dr. Johnson's July 2017 opinion said Counts could not interact with the general public, but multiple treatment notes

spanning from 2015 to 2017 say that Counts was doing well and had no depression or other mood symptoms. And, Dr. Johnson's GAF score, to which the ALJ accorded partial weight and Counts does not challenge, concluded that Counts had only moderate difficulty with work and other functional activities. This is inconsistent with Dr. Johnson's other opinions that Counts has no functional ability, will generally struggle to remember tasks, and has marked or extreme impairment.

Second, the record shows critical inconsistencies between Dr. Johnson's opinions and Counts's daily living activities. For instance, Counts reported multiple instances of working both at home, by caring for her children and grandchildren and in public, at Waffle House and as a registered nurse. These activities show that Counts could often carry out instructions, remember how to complete tasks, maintain attention, and interact with the general public despite Dr. Johnson's contrary opinions.

Counts, focusing instead on the internal inconsistences in Dr. Johnson's 2017 and 2019 opinions, nonetheless argues that the ALJ erred by noting that the opinions were standard forms, two of which were check-box forms. This argument, however, does not hold up to scrutiny. For starters, as a factual matter, the ALJ noted only that one of Dr. Johnson's opinions was a "checkbox form" with a "conclusory statement that the claimant is 'unable to work.'" The ALJ's analysis of the other two forms does not repeat this language. Moreover, even had the ALJ relied on the nature of the forms throughout, Counts could not show error. By regulation, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the Administration] will give that medical opinion." 20 C.F.R. § 404.1527(c)(3). Thus, the court has already held that an ALJ gave good reasons to give a medical opinion less weight where it found the opinion was "conclusory" and "provid[ed] very little

explanation of the information [the physician] relied upon in forming the opinion." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Thus, Counts cannot show the ALJ erred on this basis.

Counts next seems to argue that the ALJ erred in finding Dr. Johnson's opinions inconsistent with each other because the 2017 and 2019 opinions were submitted on three separate forms. This argument rests on a straw man. Naturally, the three different forms reflect three different formats. But it was the content, not the format, that the ALJ relied on. And the content reflects variations in Counts's degree of impairment, ranging from total impairment (July 2017), some impairment (August 2017), and marked and extreme impairment (March 2019). Counts cites no authority for the proposition that the ALJ must disregard content variations because of variations in form. Moreover, her argument rests on a misreading of the ALJ's findings and ignores Dr. Johnson's fourth opinion, which Counts does not challenge on appeal. Dr. Johnson's fourth opinion was a GAF score, and the ALJ accorded it "partial weight." This opinion scored Counts's overall functioning as 60 on a scale of 0 to 100. And it was to the GAF score the ALJ referred when she found inconsistencies with the other three opinions. Counts does not address the ALJ's discussion of the GAF score, however, thus waiving argument on this point. *See, e.g.*, *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005).

Finally, Counts argues that the ALJ erred because the record contains evidence that supports Dr. Johnson's opinions. While Counts's premise is true, her conclusion does not follow. The standard of review requires us to ask whether substantial evidence supports the Commissioner's final decision. Under this standard, we may not ask whether substantial evidence supports Counts's view, and we decline her invitation to reweigh the evidence.

**AFFIRMED.**